IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>   Plaintiff; )<br>)<br>   v. )<br>)<br>)<br>CARLOS MEDINA )<br>)<br>   Defendant )<br>_____ ) | CR NO 06-287 (PLF) |

### DEFENDANT'S REVISED MEMORANDUM IN AID OF SENTENCING

Defendant, Carlos Medina, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Medina asks the Court to sentence him to a period of incarceration of 21 months.

### BACKGROUND

On September 27, 2006, Mr. Medina was charged, in a four-count indictment, with one count of Harboring Illegal Aliens, in violation of 8 U.S.C. § 1324(a)(a)(A)(iii), (a)(1)(B)(ii) (Count One); Possession of Fraudulent Documents Prescribed for Authorized Stay or Employment in the United States, in violation of § 18 U.S.C. 1546(a)(Count Two); Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1)(Count Three); and Unlawful Reentry by an Alien Removed After Felony Conviction, in violation of 8 U.S.C. § 1326(a) and (b)(1)(Count Four).

1

On July 18, 2007, Mr. Medina pled guilty to Counts One and Two in accordance with a written plea agreement.

## DISCUSSION

I.   THE POST-<u>BOOKER</u> SENTENCING FRAMEWORK.

Under Justice Breyer's majority opinion in <u>Booker</u>, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." <u>United States v. Booker</u>, _ U.S. __, 2005 WL 50108,*27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in <u>Booker</u> held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to <u>Booker,</u> therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in <u>Booker</u>–sentencing courts should consider the need for the sentence imposed:

>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary,

to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

**II.     UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. MEDINA SHOULD RECEIVE A SENTENCE OF INCARCERATION OF 21 MONTHS**

    A.     <u>Statutory Provisions</u>

Pursuant to 8 U.S.C. § 1324(a)(1)(B)(ii), the maximum term of imprisonment is two years. Under 18 U.S.C. § 1546(a), the maximum term of imprisonment is ten years.

    B.     <u>Advisory Sentencing Guidelines</u>

    <u>   </u>I.     *Applicable Guideline Range*

The Probation Office, consulting the 2006 edition of the <u>Guidelines Manual</u>, has concluded that the Total Offense Level in this case is 17 and that Mr. Medina's criminal history category is II, resulting in an advisory Guideline range of 27-33 months.

    II.     *Mr. Medina's Status as a "Deportable Alien" Warrants a Downward Departure*

The D.C. Circuit has specifically held that a downward departure may be appropriate if a defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his confinement. *United States v. Smith,* 27 F.3d 649 (D.C. Cir. 1994).

Pursuant to 18 U.S.C. § 3624(c), prisoners in federal facilities have the right to participate in pre-release programs aimed at facilitating their re-entry into the community. In *Lartey v. Dep't of Justice,* 790 F. Supp. 130 (W.D.LA. 1992), however, the court determined that the right to participate in such programs was unavailable to deportable aliens and applied only to prisoners being released into communities within the United States.

Because present law requires that a non-citizen convicted of a federal offense and sentenced to imprisonment must serve the entire sentence (minus statutory good time and time

4

served) and precludes that individual from participating in certain programs while confined, it follows that Mr. Medina faces more severe treatment in this case than he otherwise would by the Bureau of Prisons. In accordance with the Circuit's holding in *Smith,* therefore, Mr. Medina qualifies for a downward departure.

### C. Other Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

*I. Nature of the Offense*

Mr. Medina pled guilty to two separate offenses–possession of a fraudulent identification document and harboring illegal aliens. The document Mr. Medina was convicted of possessing is the document that enabled Mr. Medina to obtain employment and thereby provide remittances to

his family in Mexico. While Mr. Medina recognizes that the availability and distribution of fraudulent identification poses a threat to United States security interests, he wishes to emphasize that his intent was never to harm this country or its citizens. Mr. Medina used the fake Permanent Resident Alien card to obtain, and maintain, employment. As for the harboring charge, while Mr. Medina recognizes that providing shelter to undocumented individuals is a crime, he notes that those to whom he personally provided shelter were all family members.

*II. Characteristics of the Defendant*

As set forth in the PSR, Mr. Medina started working to provide for his family at a very young age. His mother died a premature death at age 35 and, thereafter, Mr. Medina had to work long hours on the family farm while attending school. Mr. Medina left high school prior to graduating and, at age 20, entered the United States for the first time in the hopes of securing employment. From that time until the present, Mr. Medina has been the primary–if not sole–provider for his father. During the periods in which Mr. Medina has resided in the United States, he has worked almost consistently–performing odd jobs, working as an asbestos mechanic and, most recently, painting houses for an employer in Virginia. Mr. Medina has not only maintained employment while in the United States; he has taken English classes in his spare time to improve his communicative abilities. While he has three prior convictions, all three stem from immigration-related issues. While Mr. Medina had no legal right to reside in this country, it bears noting that he resided here in order to work and help support his family, not to commit violent acts or engage in crime.  That he took English classes despite his illegal status highlights his commitment to, and investment in, becoming a productive member of society.

*III. Needs of the Community and Public*

For the reasons stated in Section II, a sentence of incarceration of 21 months would serve to punish Mr. Medina while taking into account the specific characteristics of his confinement. Mr. Medina not only will not benefit from certain programs available to other inmates, but will likely serve four-to-six weeks following his "release" in immigration-related detention. Since he will not be "re-entering" the community, sentencing him to a sentence longer than 21 months would do nothing to serve the public. Mr. Medina came to this country to make a living. He did so illegally, but he did not pose a threat to his adopted "community." As he has no history of drug use or violence that would necessitate rehabilitation, the time Mr. Medina does spend behind bars will primarily fulfill the purposes of deterrence and punishment. A 21-month sentence is more than sufficient to ensure that those purposes are satisfied.

## CONCLUSION

For the reasons set forth above, as well as for any others that it may deem fair and reasonable, Mr. Medina asks the Court to sentence him to a period of incarceration of 21 months. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

A sentence of 21 months is consistent with the nature of the offense, the characteristics of the defendant, and the needs of the community and public. In addition, when considered in conjunction with an adjustment for *Smith*, a 21-month sentence is consistent with the advisory range envisioned by the United States Sentencing Guidelines.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Lara G. Quint
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500 ex.126